# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1638

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

RODRICK SMITH,

*Defendant-Appellant*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 CR 844-10—**James F. Holderman**, *Judge*.

———————

ARGUED FEBRUARY 9, 2006—DECIDED FEBRUARY 23, 2006

———————

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Rodrick Smith pleaded guilty to drug offenses and was sentenced in November 2004—between our decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. July 9, 2004), and the Supreme Court's, 543 U.S. 220 (Jan. 12, 2005). We held in *Booker* that the Sentencing Reform Act of 1984 violates the sixth amendment by giving to judges rather than juries the role of finding facts that prescribe maximum lawful sentences. The Supreme Court agreed but added that the Sentencing Guidelines continue to provide norms to guide judicial discretion, and that, with the Guidelines reduced to advisory status, judges retain fact-finding duties.

Our *Booker* opinion suggested that, pending the Supreme Court's resolution of the Sentencing Guidelines' status, district judges select alternative sentences: one to be effective if the Guidelines survived, another to control if they were jettisoned. Whichever side was aggrieved by the sentence actually imposed could appeal, and we would affirm or remand as appropriate after the Supreme Court's decision. The district court pronounced such an alternative for Smith: 37 months if the Guidelines survived, 24 months if they did not. The sentence actually imposed was 37 months, so Smith was the natural appellant. We would have held any appeal for the Supreme Court's decision, which was imminent.

But Smith did not appeal. Instead he waited until the Supreme Court's opinion issued, and in February 2005 he filed a motion asking the district court to substitute the 24-month term for the 37-month one. The district court denied this motion, stating that as far as he is concerned the Guidelines *had* survived. A 24-month sentence, he wrote, would have been appropriate only had the Supreme Court thrown the Guidelines out the window and reinstated the system that existed before the Sentencing Reform Act. *Booker* did not do that, and the district judge concluded that 37 months is an appropriate sentence for Smith as long as the Guidelines remain the starting point, as they do. See *United States v. Dean*, 414 F.3d 725 (7th Cir. 2005); *United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005).

Smith's appeal is too late when measured from the date on which his 37-month sentence was imposed. (The sentence, an unconditional 37 months, left nothing up in the air, so its imposition was a final and appealable judgment.) The appeal is timely with respect to the order denying the motion to reduce the sentence to 24 months, but what authority is there for a district judge to do that? One fundamental change made in 1984 was to provide that, once sentence has been imposed, neither the judge nor a parole

board may make changes. Prisoners thus know from the day of sentencing when they may expect to be free, if they behave in prison and receive a 15% reduction from good-time credits. The public also knows that sentences are real; parole early in a term, and other reductions common before the 1984 legislation, had made the formal sentences look phony, and sometimes the process had bewildered even the judges, who could not be sure how much time a defendant would serve. See *United States v. Addonizio*, 442 U.S. 178 (1979).

Under the Sentencing Reform Act, district judges have limited authority to alter sentences after their imposition:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. §3582(c). Rule 35 in turn authorizes a district judge to modify a sentence within seven days of its imposition to correct a technical error, or on the prosecutor's motion to reward substantial assistance rendered after the sentence had been imposed. Neither of these circumstances pertains to Smith, nor does any of the exceptions in §3582(c) assist him. Because §3582(c) limits the substantive authority of the district court, it is a real "jurisdictional" rule rather than a case-processing requirement. See *Eberhart v. United States*, 126 S. Ct. 403 (2005). It is the sort of limit that must be respected, and which we must enforce even if everyone else has ignored it. See *United States v. Lloyd*, 398 F.3d 978 (7th Cir. 2005); *United States v. Vega*, 241 F.3d 910 (7th Cir. 2001).

Smith has never worried about the district court's power to act on his motion, and the district judge did not discuss that subject. The prosecutor has given the matter some thought, but the only source of authority the Executive Branch has suggested—Fed. R. Crim. P. 36—does not supply what is necessary. Rule 36 permits a district judge to correct clerical errors in judgments. Fixing a judgment so that it accurately reflects the original sentence does not "modify" the sentence and hence falls outside §3582(c). The prosecutor contends that the judgment entered in November 2004 should be corrected to conform to the oral pronouncement, which was 37 months if the Guidelines should be sustained by the Supreme Court or 24 if they should be vitiated.

Yet the district judge did not think the written judgment in error and did not invoke Rule 36. A term of 37 months is exactly what the judge wanted. The court did not leave it to the Director of the Bureau of Prisons to determine, in light of *Booker*, whether to release Smith after 24 months. Instead the judge reserved that decision to himself.

Suppose that the judge had spelled this out—either on the date he imposed sentence, or later by using Rule 36. Then the judgment would have read something like: "The defendant is committed to the custody of the United States Bureau of Prisons for a total term of 37 months, unless the Supreme Court of the United States holds the Sentencing Guidelines to be ineffectual; in that event, this court will reduce the term to 24 months." Such a judgment would reserve a right to modify a sentence. Yet district judges cannot grant themselves authority that has been withdrawn by the legislature; the point of §3582(c) is to block post-sentencing modifications that district judges *want* to make, not to furnish judges with an excuse to deny motions they would not have granted anyway. So using Rule 36 to insert a reservation of power into the judgment would not do

Smith any good; the district judge still could not cut Smith's sentence to 24 months.

Imagine some variations on the approach that the prosecutor suggested. Suppose the district judge, acting in a case in which he had denied a motion to suppress evidence seized from the defendant's residence, had written: "Defendant is committed to the custody of the United States Bureau of Prisons for a total term of 37 months, unless the Supreme Court of the United States issues a decision holding the exclusionary rule applicable to violations of the fourth amendment's knock-and-announce principle; should that occur, the court will reduce the sentence to 24 months." That's not a fanciful possibility. This court has held that entry without adequate delay after an announcement of one's authority to conduct a search can lead to damages but not suppression, see *United States v. Langford*, 314 F.3d 892 (7th Cir. 2002), and the Supreme Court has that question under consideration in *Hudson v. Michigan*, cert. granted, 125 S. Ct. 2964 (2005) (argued Jan. 9, 2006). It might seem sensible to both a defendant and the court to impose a sentence whose length depends on a condition subsequent: the outcome of *Hudson*. Yet at oral argument both sides agreed that an attempt to reserve the power to resentence a defendant after *Hudson* would be ineffectual. A defendant may appeal and ask us to hold for *Hudson*, but a district judge may not grant himself an open-ended period to revise a sentence in light of new authority.

Or consider this sentence: "37 months in prison, but if the defendant is well behaved for the first year then 24 months." Judges regularly used the pre-1987 version of Rule 35, which permitted reductions within 120 days after the Supreme Court denied certiorari, to maintain effective control of a sentence for several years following its imposition and to take account of conduct in prison and other events that the judge deemed pertinent to rehabilitation.

Section 3582(c) abolished that power. Yet if Smith and the prosecutor are correct in this case, then all a district judge need do to maintain indefinite control over the length of a defendant's imprisonment is assert that control in the judgment, by imposing a condition subsequent. That can't be right; we hold that it is not right.

Before wrapping up, we must consider the possibility that Smith's notice of appeal could be treated as requesting direct review of the original judgment, just as if he had appealed in November 2004 and we had held the proceedings for *Booker*'s final disposition. A belated appeal could not be justified by the "unique circumstances doctrine" of *Thompson v. INS*, 375 U.S. 384 (1964), which as explained in *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989), comes into play "where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." Smith did not take any step that, if done properly, would postpone appealability of his sentence. Nor did the district judge assure him that an appeal in November 2004 was unnecessary to preserve his rights.

*Eberhart* suggests that the time limit for appeal is nothing but a "case processing rule" that a court may disregard if the party that would benefit from the rule's enforcement waives or forfeits its rights. See also *Kontrick v. Ryan*, 540 U.S. 443 (2004). The Supreme Court has called the time limit "mandatory and jurisdictional" dozens of times, however, and we are reluctant to upset that understanding—not only because the Justices have cautioned appellate courts to use care in treating such declarations as dicta that may be swept aside, see *Eberhart*, 126 S. Ct. at 407, but also because Smith himself does not characterize this as a belated appeal of the sentence imposed in November 2004. Both sides treat these appellate proceed-

ings as limited to review of the decision the district court made in March 2005. Taking them at their word enables us to leave for another day—when the subject has been fully briefed—the question whether an untimely appeal may be entertained with the consent (or after the oversight) of an appellee.

The decision of the district court is vacated, and the case is remanded with instructions to dismiss the motion for lack of subject-matter jurisdiction.

A true Copy:

      Teste:

                         _____

                         *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*